oral argument, not to exceed 15 minutes per side. Mr. Rager for the appellant. Good morning, Your Honors. Good morning. At first I'd like to ask to reserve a minute for rebuttal if I need it, Your Honors. Very well, thank you. My name is Jeff Rager on behalf of the Kentucky Fleeing and Evading Statute. I'd like to please the court, Ms. Smith, Mr. Wisdom. I appreciate the opportunity to clarify my argument for Derrick Ball and why I believe that the Kentucky Fleeing and Evading Statute should not fall under the Armed Career Criminal Act. For purposes of today, I made several arguments in my brief, but I'm just going to focus on a couple of them for the court because of time constraints and I think those are the most important issues. The first one, of course, is whether Kentucky Fleeing and Evading, KRS 520-095, should fall under the ACCA as considered a violent felony. And I want to start off by saying a general overview of what my argument is on this statute and then take the court through how I get there. And one of the things I want to ask the court to keep in mind is that in this statute there is an equivalency of conditions and of punishment that I believe takes it into the McGay analysis. And let me start by explaining the Kentucky Fleeing and Evading Statute as I read it. A person is guilty of this with intent to elude the person wrongly and knowingly disobeys an officer's command to stop. That is where I think the intent comes into play, the disobeying part. When we look at the second part of that statute there, it says it is only a Class D felony in Kentucky, which is one to five years, if one of these conditions exists. And there's four of them there. Fleeing domestic violence, DUI, driving on a DUI suspended, and finally the fourth provision, which is the substantial risk of injury language that Mr. Ball pled to in 2009. I would also note that in this statute, in the second provision of it, it says running on foot and creating substantial injury under the same Class D felony. Now when I look at this, the first point I want to, when I analyze the statute, is where it should fall and how we should analyze it under the ACCA. I think it's fairly clear that it doesn't fall in that one provision of use, threatened use, or attempted use of force. And I cited to the court in my brief an unpublished Sixth Circuit opinion case of, and forgive me if I mess up the pronunciations, but Moises Andular de Leon. But I also cite to the court Sykes at 2273, where I think the court's pretty clear when it says fleeing and evading, generically, does not fall under that provision. So I think that leaves us with the residual clause. And I think the next step for us is, is it categorically, should we look at it, or under the modified categorical approach? The district court, in this case, I believe, looked at it categorically. On page 45 of the sentencing transcript, you can see where the court said, quite frankly, I think this should be a categorical approach. I disagree with that, and let me cite to the court some of the things that I believe in. You know, in U.S. v. Sykes, and this is my first distinction between that case, because we know that the United States Supreme Court analyzed, in the end, a fleeing and evading statute. And I believe that they did that categorically. However, in Kentucky, we cannot do this categorically, and I would cite to the court U.S. v. James at page 208, where they say that a crime will fall outside the categorical definition if there's a realistic probability that the state would apply conduct under that statute outside of that generic definition. I think when we look at the Kentucky statute and look at those conditions, a person can be pulled over after they disobeyed a police officer and not have their license in their pocket because of a prior DUI. That is a strict liability crime. I don't see how we can see it any other way. I would also, and I believe when we look at it that way, that we're stuck with the, we're taken outside of the categorical approach. And when we're taken outside of the categorical approach, I believe the stress and importance is on how we interpret the Kentucky statute. You know, when I look at Begay, when they say that at 145, you know, we have to look at the state law and question whether it's similar in kind or similar in risk. Again, they're looking at state law. When I look at James at page 197, or again at 200. This statute itself fit right into the residual clause, which said, otherwise involves conduct that presents a serious potential risk of physical injury. And the statute says, a person is the cause or creates substantial risk of serious physical injury. Sounds like it's the same language to me, doesn't it to you? I understand exactly what the court is saying, and that's why I'm saying we have to look at this in interpretation of Kentucky law. Because when I look at that statute and I see that those four conditions, I don't see any difference in how Kentucky would view those. Again, there's equivalency of those conditions. And when I look at two of those conditions being clearly strict liability, DUI and driving on a DUI suspended, I think when we interpret this statute, at the very least, we've got to say that Kentucky would interpret this as a reckless crime. And that's the main meat of my argument, really, is that when we look at this statute and what Mr. Ball pled to back in 2009, he was pleading to what Kentucky would consider a reckless crime. And I just do that simply from reading that statute. Do you have a Kentucky case from the Kentucky Supreme Court that says that? I looked for one, Your Honor, but I could not find one. Because I was hoping that I would be able to find one like that, but I just couldn't find one that said that. Don't you run into a problem with the language in the Sykes case that talks about vehicle flight being inherently a violent crime and resulting in the risk of violence? That is why I'm stressing the importance of interpretation of Kentucky law and why we're outside of the Sykes categorical approach. Because if I read Sykes correctly, they analyze the Indiana fleeing and evading statute categorically. We're not so analyzing the Kentucky statute. We have to take it outside of that categorical definition. And when we do that, and I look at the case law again, I'll go to James again, where the court was dealing with an attempted burglary statute. And what they say is the question for the court is whether, as defined by Florida law, if attempted burglary falls under residual clause. And when I take that and I see the stress on state law interpretation of these statutes, I've got to look back at that statute and say to myself, there's an equivalency of these conditions, and there's also an equivalency of the punishment. Because I think once we get there, we also have another hurdle to overcome to be persuaded by my argument. And that is if, can we do something like what the United States Supreme Court did in Chambers and split this statute up? And my argument to that is no. And what I noticed in Chambers is, is they were able to split that statute, or to look at that statute differently, because there was an equivalency of punishment for both attempted burglary and burglary itself. So they said attempted burglary would fall under this, and then they went to the risk analysis. And I would also point to Sykes too, where that defendant argued, and I can cite the page number for the court, at 2276, that he said, I was convicted under this one provision in the same statute, which was simple fleeing and evading, did not have that substantial risk language in it. And the second provision in that statute did have the substantial risk language. The Supreme Court rejected that and said, no, we're going to treat these the same, because there was an equivalency of punishment involved. They were both the same punishment. And when I turn that reasoning to this case, we have a Class D felony for four conditions. Two of those conditions are clearly strict liability. And so when I look at that fourth provision there, and what he slid to in 2009, I look at that in Kentucky law as being reckless, which takes us into the gay analysis instead of the Sykes case. But you have no authority that Kentucky interprets that to mean reckless conduct. I mean, you're just making that up. Well, I'm looking at the statute, Your Honor. I'm not making it up. Well, I'm looking at the statute, and this is a divisible statute. And therefore, under H.M. and Davis, we can use the modified categorical approach to look at the Shepard documents to determine which section of this statute he was charged with, because it is a divisible statute. It's got four different categories here. So once we go to the Shepard documents, we see that he really is charged under Section 4. And Section 4 is almost identical to the Armed Career Criminal Act, other than it doesn't have the potential language. It actually requires causes or creates substantial risk, not the potential substantial risk. So it even requires greater conduct, violent conduct, than the ACC requires. So, I mean, I think it's a relatively simple case. What's wrong with that analysis? Well, that's why I stress the importance of taking it outside of that categorical approach and looking at how Kentucky law works. Well, I know, but you don't have any Kentucky law support yet. That unfortunately leaves us with having to interpret the Kentucky law. Interpret it when you don't have anything. I mean, I read the language to say what it requires is the same conduct, other than the potentiality, as the ACC. I would just say that Kentucky would view that as a reckless crime. Yeah, that's what your hope would be, I guess, but, okay, all right. That's how I interpret it, because I understand the court's argument, because that language, and I would notice that it wasn't causing, in his indictment, it was creating substantial risk. So there wasn't a cause where he actually did something, but it was the creation of that. But that leads me sort of to my next point, your Honor, even if you all aren't persuaded by my interpretation of Kentucky law. I think the rule of lenity has a little bit of teeth here for Mr. Ball. And the way I would look at that, the honors, back in the Begay case came out in 2008. He pled guilty to this in 2009, was when he was convicted. And I think looking at, when I said the equivalency of those things, where Kentucky puts DUI suspended, driving DUI suspended, driving on a DUI in the same category, which, as I have to disagree, they have to be read together and not divisibly, that somebody in 2009, after, if we're going to continue this legal fiction that people are on notice of these things, that somebody would quite reasonably say, when I plead guilty to this, based on the Begay analysis, that I'll be all right under the ACCA. And I think back then, you know, I really do, because it wasn't until four years later we actually had the Supreme Court telling us that, well, no fleeing and evading is one. And that was also under a different statute. If Kentucky did not have that DUI language or that driving on DUI suspended, I think this would be a real simple case. But with that in there, I think there's enough ambiguity where Mr. Ball should be given the benefit of the doubt, because the touchstone of the lenity is statutory ambiguity and also notice. But if we decide it's not ambiguous, then he doesn't get any benefit, right? I'm sorry, Your Honor? If we don't find that it was ambiguous, then he doesn't get the benefit of the lenity rule, right? Of course, Your Honor, yes, if you find it's not ambiguous. I would also further distinguish Sykes before going into my next argument real quick, is that I think the risk analysis is a little skewed in Sykes as well, because Kentucky equates this to running on foot. And the Sykes analysis talks about all the things going on with driving and fleeing. It looks like I have a little bit of time left here, and I just want to quickly talk about Derek's right to a jury trial in our Sixth Amendment, because that was one of the issues I preserved as well under Alleen. And I think one of the first things that I need to do is, can this court even render an opinion on something like that? And I think the door is open for us to do this, even despite that footnote in Alleen that says we kept this narrow exception. I think it's time for me to sum up here. I really wanted to get into that, but I think the meat of what we're doing here is whether this Kentucky statute should fall under this. And again, I look at the equivalency of those conditions. I don't think it's divisible. And I also look that they're all Class D felonies under Kentucky law. Morning. Morning. May it please the court. Kate Smith from the Eastern District of Kentucky on behalf of the United States. At issue here today is one of Derek Ball's three convictions, and that is his 2008 conviction in Mercer County for fleeing and evading in the first degree. Kentucky's fleeing and evading statute in the first degree is categorically a crime of violence. Mr. Rager focused on the four subparts to Section 1A. I would like to focus on the core offense in 1A, which deals with vehicle flight knowingly or wantonly from an identified police officer who directs someone to stop. That is exactly what the court considered in Sykes. It's a different statute. In Indiana law, it's structured differently. But what Sykes looked at was that very similar situation. A known police officer tells someone to stop, and the person knowingly flees from the officer. Those are the conditions. In essence, it doesn't matter what subpart Mr. Ball was prosecuted under because he has to be guilty of that first core offense. That is not a reckless crime. Knowingly or wantonly is criminal intent. Kentucky law defines wantonly as recklessness plus. It is beyond recklessness under a Kentucky statute. I'd like to focus on the language in Sykes, which is directly relevant here. I'm going to read directly from it. Risk of violence is inherent to vehicle flight. It presents more certain risk as a categorical matter than burglary. Flight from a law enforcement officer invites, even demands, pursuit. As that pursuit continues, the risk of an accident accumulates. And having chosen to flee and thereby commit a crime, the perpetrator has all the more reason to seek to avoid capture. And in all of the alternative scenarios under the Kentucky statute, that core offense has already been committed. In this case, Mr. Ball went a step further and was under subpart 4, admitting to conduct that caused a substantial risk of injury to another person. But I almost think that doesn't matter because he's already guilty of the core offense. And Sykes says, as a categorical matter, that vehicle flight meets the standard of a crime of violence under the Armed Career Criminal Act. If we didn't follow the categorical approach, what would we do? We would get to the modified categorical approach. So the statute is divisible in the sense that there are alternate scenarios presented under it. There are different clauses someone could be guilty of. But each of those clauses is a crime of violence. So the court doesn't even have to get to that phase. But if you do get to the phase of a modified categorical approach, which Judge Reeves did consider because he did get to the indictment in this case, then the court can look at a limited set of documents, including the indictment, the plea agreement, the plea colloquy, and establish which subpart applied to the defendant. The actual conduct of the defendant doesn't matter. You look to those documents simply to establish which subpart the defendant was pleading guilty to. And in that case, if you get to the modified categorical approach under this statute, Derek Ball is plainly guilty of a crime of violence. What does it show? It shows that he committed the crime knowingly. He resisted a police officer, fled from the— It shows he was charged under sub 4, right? Yes, exactly. Excuse me. So that's the answer. We don't get into the conduct. Right. Yes. We don't get into what the charge was. Yes. It shows— It shows the plea was to the charge, and the charge was sub 4. Yes. In the plea agreement, he conceded the facts in the indictment. Getting to the second part of the statute, section 1B, flight on foot, that issue is not before the court because that's not what Derek Ball is guilty of, but Sykes does suggest that that subpart would also be a crime of violence. They are felonies of the same magnitude, vehicle, flight, and flight on foot, and it has the same mens rea requirement. It also has subparts which both add an additional degree of risk. Now, Sykes didn't consider this. The Supreme Court hasn't considered this, and we haven't briefed it, but I submit that it is also a crime of violence. It has many of the same factors that the logic in Sykes uses. It has the same knowing or want in fleeing from a police officer, the expectation of confrontation with police, and indifference to the collateral consequences. Mr. Ball's own conduct that led to the current charge, the felon in possession charge, is an example of what can be expected when somebody runs from a police officer. He fled and was apprehended. He had two forms of drugs, marijuana and cocaine, and a weapon on him. That has an inherent risk, maybe less than vehicle flight, but it is enough to trigger crime of violence under the Armed Career Criminal Act. The court considered a similar statute in the United States versus Meeks, this court, and the court held that wanton endangerment constituted a crime of violence because it created a substantial danger of death or serious physical injury. That is true here. This court has the same mens rea knowingly, wantonly, and the crime leads to that same potential for serious risk of injury. And the court in that case found that the crime qualified under both approaches, looking at it as though it were a strict liability crime and an appropriate mens rea crime. The defense focuses on U.S. versus Moises Aguilar de Leon. That case is not published. It has no precedential effect here. And the logic in that case, I think, is misguided under Sykes. The focus there was on subpart four of the vehicle flight statute, and it turned on property or person, whether the harm was to a property or person. And under Sykes, that isn't necessary. It's the core offense that really makes it a crime of violence. There are two other crimes that Mr. Ball was convicted of that qualified as crime of violence. One of the other charges was also fleeing and evading in the first degree. The fact that the defendant concedes this shows that it is possible that this crime is a crime of violence. As for the defendant's constitutional arguments, the rule of lenity does not apply. The statute is not ambiguous, and binding precedent makes clear that the statute is constitutional. Similarly, I.N. does not apply because of the exception for a district court to determine prior convictions. For the reasons stated in the government's brief, Ball's additional constitutional challenges to the Armed Career Criminal Act fail as a matter of law pursuant to binding precedent. Unless there are any further questions, the government will rest on its brief. All right. Thank you very much. Thank you. Thank you. Any rebuttal? Just quickly, Your Honors. Again, I would just say that my interpretation of the statute is not divisible. Can we say that somebody wantonly doesn't have their license in their wallet when they're being pulled over? That's why I say the wanting and the knowing part is when the person disobeys the officer and not how they're committing the fleeing. I think Meeks deals with want and endangerment, which is really comparing apples and oranges. I would also say that I did not, or Mr. Ball did not concede on that first fleeing and evading. I conceded to the fact that when I looked at that and the constitutional issues, or I did not concede that if we went farther and interpreted the Kentucky statute as I am asking the court to do, that that still would not fall under that. What I think the judge was focusing on is that I didn't give him the plea colloquy that was involved in that. He had all the other things. But I was still making my arguments preserve that the statute as a whole should not fall under the ACCA. Thank you, Your Honors. Thank you. And the case will be submitted. Mr. Ranger, I know you were appointed on the Criminal Justice Act, and you've done an excellent job, and I know you do it as a service to the court, so the court would like to thank you for having done that. Thank you, Your Honor. It's also a duty that I enjoy. Thank you very much. You may call the next case.